

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

Signed April 29, 2009

*Barbara J. Houser*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 09-31828 (BJH) |
| IDEARC INC., <u>et al.</u> | § | |
| | § | (Chapter 11) |
| | § | |
| Debtors. | § | JOINTLY ADMINISTERED |

### FINAL ORDER AUTHORIZING
### USE OF CASH COLLATERAL AND GRANTING
### ADEQUATE PROTECTION TO LENDERS

   **CAME ON FOR CONSIDERATION** on April 1, 2009 and April 27, 2009, the

Debtors' *Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B)*

*Granting Adequate Protection to Lenders, and (C) Scheduling Final Hearing* (the "<u>Cash</u>

<u>Collateral Motion</u>") filed by Idearc Inc. ("<u>Idearc</u>") and certain of its direct and indirect

subsidiaries, the above-captioned debtors and debtors-in-possession herein (each a "<u>Debtor</u>" and

collectively, the "<u>Debtors</u>"[1]), seeking, *inter alia*, pursuant to Sections 105, 361, 362(a), and

---

[1]   The Debtors in these related cases are Idearc Inc., Idearc Information Services LLC, Idearc Media LLC, Idearc
    Media Services – East Inc., Idearc Media Services – West Inc., Idearc Media Sales – West Inc., Idearc Media
    Sales – East LLC, Idearc Media Sales – East Co., License Application Corporation, and Second License
    Application Corporation.

363(c) of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), and Rules

4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy

Rules"), the following:

(i)    authority for the Debtors to use the Cash Collateral (as defined below) of the Lenders (as defined below) in accordance with the terms and conditions set forth herein to finance the operations of the Debtors' businesses and to make the adequate protection payments described herein;

(ii)    granting adequate protection to the Agent (as defined below) and the Lenders for any diminution in the value of the Lenders' interests in the Pre-Petition Collateral (as defined below), including for the use of the Cash Collateral, the use, sale or lease of the Pre-Petition Collateral other than the Cash Collateral, or the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a) (the "Automatic Stay");

(iii)    modification of the Automatic Stay to the extent provided herein;

(iv)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order granting the Cash Collateral Motion (this "Final Order"), including any objections to the Cash Collateral Motion (collectively, the "Objections")[2]; and

(v)    for entry of this Final Order.

---

[2] The Objections consist of: (i) the *Objection of Dallas County, Tarrant County, City of Coppell, Coppell Independent School District and Irving Independent School District to Interim Agreed Order Authorizing Use of Cash Collateral and Granting Adequate Protection to Lenders* [Docket No. 163] and (ii) the *Opposition of the Official Committee of Unsecured Creditors to the Debtors' Emergency Motion for an Interim and Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection to Lenders* [Docket No. 169].

1. It appearing that the relief requested in the Cash Collateral Motion is in the best interest of the Debtors' estates, their creditors, and other parties-in-interest, that notice of the Cash Collateral Motion and the opportunity for a hearing on the Cash Collateral Motion was appropriate under the particular circumstances and that no other or further notice need be given, and that after consideration of the evidence (including the stipulations of the parties and agreements made in good faith) and the argument of counsel, and, after due deliberation, that sufficient cause exists for granting the Cash Collateral Motion, the Cash Collateral Motion is GRANTED as set forth herein.

2. Therefore, in accordance with Bankruptcy Code §§ 361, 362, and 363, this Court hereby finds and Orders:

3. The Debtors and the Agent have negotiated at arms' length and in good faith regarding the Debtors' use of the Cash Collateral to fund the administration of the Debtors' estates and continued operation of their businesses. Based upon (a) the terms and conditions contained herein, (b) the agreement in principle reached prior to the Petition Date among the Debtors, the Agent and a steering committee of the Lenders concerning key elements of a plan of reorganization for the Debtors, and (c) the scheduling of hearings to consider approval of a disclosure statement and confirmation of a plan of reorganization, in each case anticipated to be filed by the Debtors on or before May 15, 2009, the Agent has consented to the Debtors' use of the Cash Collateral through the Termination Date (as defined below), all subject to the terms and conditions set forth in the Interim Order (as defined below) and this Final Order.

## STATEMENT OF JURISDICTION

4. This Court has jurisdiction over these Chapter 11 cases and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## NOTICE

5.      Notice of the Final Hearing and the relief requested in the Cash Collateral

Motion has been given to: (a) the Office of the United States Trustee; (b) the attorneys for the

Agent; (c) all creditors known to the Debtors who have or may assert liens against the Debtors'

assets; (d) the United States Internal Revenue Service; (e) the fifty (50) largest unsecured

creditors (on a consolidated basis) of the Debtors; (f) U.S. Bank National Association, as

indenture trustee in respect of Idearc's 8% senior unsecured notes; (g) the Securities and

Exchange Commission; (h) the Official Committee of Unsecured Creditors appointed in these

Cases (the "Committee"); and (i) all parties in interest who have filed a notice of appearance or

upon whom service must be effected under the Bankruptcy Rules or the Local Rules of the

Northern District of Texas. Such notice of the Final Hearing complies with the requirements of

Bankruptcy Code §§ 102 and 363, Bankruptcy Rules 2002 and 4001, the Local Rules of the

Northern District of Texas and the Interim Order.

## FACTUAL AND PROCEDURAL BACKGROUND

6.      On March 31, 2009 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-

captioned bankruptcy cases (collectively, these "Cases"). The Debtors continue in the

management and possession of their businesses and property as debtors-in-possession pursuant

to Bankruptcy Code §§ 1107 and 1108.

7.      On April 1, 2009, the Court conducted the interim hearing (the "Interim

Hearing") on the Cash Collateral Motion and the Court entered the *Interim Agreed Order*

*Authorizing Use of Cash Collateral and Granting Adequate Protection to Lenders* (the "Interim

Order") authorizing the Debtors to use the Cash Collateral on an interim basis pending the Final

Hearing, subject to the terms and conditions of the Interim Order, and granting adequate protection to the Agent and the Lenders as set forth in the Interim Order.

8.      On April 13, 2009 the United States Trustee appointed the Committee.

## **The Lenders' Claims**

9.      Pursuant to the Credit Agreement dated as of November 17, 2006 (as amended, supplemented or otherwise modified, the "Credit Agreement"), among Idearc, the lenders party thereto (including holders of secured Swap Obligations (as defined below), the "Lenders") and JPMorgan Chase Bank, N.A., as administrative agent for the Lenders (in such capacity, the "Agent"), the Lenders made in excess of $6.4 billion of loans and other financial accommodations to or for the benefit of Idearc and the other Debtors.  All such loans, financial accommodations and other amounts owing by the Debtors to the Agent and the Lenders under, or in connection with, the Credit Agreement and the other collateral and ancillary documentation executed in connection therewith (as amended, supplemented or otherwise modified, the "Loan Documents"), including the Debtors' obligations (such obligations, the "Swap Obligations") in respect of certain interest rate protection arrangements (the "Swap Agreements"), are hereinafter referred to as the "Pre-Petition Obligations".   The Debtors acknowledge and agree that the Debtors are truly and justly indebted to the Lenders and the Agent on account of the Pre-Petition Obligations, without defense, counterclaim or offset of any kind.

10.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 45), the Debtors acknowledge and agree that, as of the Petition Date, the Debtors were liable to the Lenders under the Credit Agreement and the other Loan Documents in the aggregate principal amount of not less than $6,419,000,000 under the Credit Agreement, plus not less than $42,000,000 in accrued but unpaid interest, plus not less than $51,000,000 in respect of the Swap Obligations (the aggregate

liability of the Debtors in respect of Swap Obligations based upon the termination of the related swap agreements immediately following the Petition Date is approximately $570,000,000), plus any and all other fees, costs, and expenses of the Lenders and Agent under the Loan Documents.

### The Pre-Petition Collateral

11.     Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 45), the Debtors acknowledge and agree that, pursuant to the Loan Documents, including without limitation, the Guarantee and Collateral Agreement, dated as of November 17, 2006 (as amended, supplemented or otherwise modified, the "Guarantee and Collateral Agreement"), made by the Debtors in favor of the Agent, for the ratable benefit of the Lenders, the Pre-Petition Obligations are secured by perfected, valid and enforceable first priority liens and security interests upon and in substantially all of the assets and property of the Debtors, including without limitation,  accounts, instruments, investment property, general intangibles, inventory, equipment, fixtures, intellectual property, owned real property, the capital stock of Idearc's subsidiaries, books and records pertaining to the foregoing and all proceeds and products of the foregoing (including the setoff rights described in the Loan Documents and arising by operation of law, including pursuant to Bankruptcy Code § 552(b), collectively the "Pre-Petition Collateral").

### The Lenders' Interests

12.     Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 45), the Debtors acknowledge and agree that the Agent holds, on behalf of the Lenders, valid, enforceable, first priority, perfected liens and security interests in the Pre-Petition Collateral and the Cash Collateral, as provided by the Interim Order, this Final Order and applicable law to secure the Pre-Petition Obligations.

## CASH COLLATERAL

### The Lenders' Cash Collateral

13.    Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 45), the Debtors acknowledge and agree that their cash balances, which exceeded $650,000,000 as of the Petition Date, together with amounts generated by the collection of accounts receivable, the sale of inventory or other disposition or collection of the Pre-Petition Collateral, constitute Pre-Petition Collateral or the proceeds of the Pre-Petition Collateral, and are therefore cash collateral of the Lenders within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral").

### Need For and Consent to Use of Cash Collateral

14.    The Agent does not consent to the Debtors' use of the Pre-Petition Collateral, including the Cash Collateral, except in accordance with the terms and conditions contained in the Interim Order or this Final Order, as applicable.  In addition, the Lenders are entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of their interest in the Pre-Petition Collateral to the extent of the diminution in value, including for the use of the Cash Collateral, the use, sale or lease of the Pre-Petition Collateral other than the Cash Collateral, and the imposition of the Automatic Stay.

15.    Good cause has been shown for the entry of this Final Order.  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral.  Among other things, entry of this Final Order will minimize disruption of the Debtors' businesses and operations and permit them to make payroll and other operating expenses, maintain business relationships with their vendors, and retain customer and vendor confidence by demonstrating an ability to maintain normal operations.  The use of the Cash Collateral is therefore of the utmost significance and

importance to the preservation and maintenance of the going concern value of the Debtors and their estates, and will enhance the prospects for a successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code. The Cash Collateral is more than sufficient, however, to fund the Debtors' businesses and these Cases and no separate post-petition financing is contemplated.

### Authorization for Use of Cash Collateral

16.     Based on the record presented to this Court at the Interim Hearing and the Final Hearing, the terms of the Debtors' proposed use of the Cash Collateral are fair and reasonable, and reflect the Debtors' and their respective directors' exercise of prudent business judgment consistent with their fiduciary duties.

17.     Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor, this Court concludes that entry of this Final Order is in the best interest of the Debtors' estates and creditors.

### Cash Collateral Usage

18.     The Debtors are hereby authorized to use the Cash Collateral through and including the Termination Date (as defined below) for general corporate purposes and the costs and expenses associated with these Cases, but only in accordance with a budget approved by the Agent in the exercise of its reasonable discretion (any such approved budget, the "Budget"), a copy of the Budget for the 13 week period commencing on April 3, 2009 is annexed hereto as Exhibit 1; provided that (a) all uses of cash by the Debtors shall be deemed to be made first from any cash that is Cash Collateral and thereafter from cash, if any, that is not Cash Collateral and (b) none of the Debtors, the Committee or any other party in interest shall be authorized to use the Cash Collateral to prosecute (but the Committee may use the Cash Collateral to investigate,

subject to the limitations set forth in paragraph 25 hereof) any claims or causes of action against the Agent or the Lenders. The Budget may be modified by the Debtors in writing only with the prior written consent of the Agent in its sole discretion.

19. Except in the ordinary course of business or as expressly authorized by an order of this Court, and in either case, only as set forth in the Budget, the Debtors shall not make any advances to any non-Debtor affiliate.

20. Except as otherwise provided herein, the Debtors shall maintain their pre-Petition Date cash management and accounts receivable collection system to the extent authorized by, and subject to the terms of, any order of this Court governing the Debtors' cash management system.

## ADEQUATE PROTECTION OF THE LENDERS' INTERESTS

21. The Agent and the Lenders are granted the following as adequate protection for, and to the extent of, any diminution in the value of the Agent's and the Lenders' interest in the Pre-Petition Collateral resulting from (x) the use of the Cash Collateral pursuant to Bankruptcy Code § 363(c), (y) the use, sale or lease of the Pre-Petition Collateral (other than the Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (z) the imposition of the Automatic Stay (the amount of any such diminution being referred to hereinafter as the "Adequate Protection Obligations"):

### Replacement Liens

22. To secure the Adequate Protection Obligations, the Agent and the Lenders are hereby granted (effective as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other documents or instruments), valid and perfected, replacement security interests in, and liens (the "Replacement Liens") on, all of the right, title and interest of the

Debtors in, to and under all present and after-acquired property of the Debtors of any nature whatsoever including, without limitation, all cash contained in any account of the Debtors, and the proceeds of all causes of action (collectively, with the proceeds and products of any and all of the foregoing, the "Post-Petition Collateral"), but excluding all causes of action (and proceeds thereof) arising under Bankruptcy Code §§ 544, 545, 547, 548 and 550 (collectively, the "Avoidance Actions"). Subject to the Carveout (as defined below), said Replacement Liens shall be (x) a first priority perfected lien upon all of the Post-Petition Collateral that is not otherwise encumbered by a validly perfected, enforceable, non-avoidable security interest or lien on the Petition Date, (y) a first priority, senior, priming and perfected lien upon (a) that portion of the Post-Petition Collateral that is comprised of the Pre-Petition Collateral and (b) Post-Petition Collateral subject to a lien that is junior to the liens securing the Pre-Petition Obligations and (z) a second priority, junior perfected lien upon all Post-Petition Collateral (other than the portion described in the preceding clause (y)), which is subject to a validly perfected lien as of the Petition Date or to a valid and unavoidable lien in existence immediately prior to the Petition Date that is perfected after the Petition Date as permitted by Bankruptcy Code § 546(b).

### Superpriority Administrative Claims

23. Subject to the Carveout, the Adequate Protection Obligations shall constitute expenses of administration under Bankruptcy Code §§ 503(b)(1), 507(a) and 507(b) (the "507(b) Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Bankruptcy Code §§ 105, 326, 328, 330, 331 and 726, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in these Cases or, to the extent permitted by applicable law, any subsequent proceedings under the Bankruptcy Code.

Subject to the Carveout, no cost or expense of administration under Bankruptcy Code §§ 105, 503(b) or 507(b) or otherwise, including those resulting from the conversion of these Cases pursuant to Bankruptcy Code § 1112, shall be senior to, or <u>pari</u> <u>passu</u> with, the 507(b) Claims of the Lenders arising out of the Adequate Protection Obligations.

## <u>Carveout</u>

24. As used in this Final Order, "Carveout" means (a) the unpaid fees of the Clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. §§ 1930(a) (collectively, the "<u>Statutory Fees</u>"); (b) following delivery of written notice to the Debtors that an Event of Default (as defined below) has occurred and is continuing, and provided that such Event of Default has not been waived or cured, the payment of allowed professional fees and disbursements (the "<u>Professional Fees and Disbursements</u>") incurred by the professionals retained by the Debtors or the Committee (other than the fees and expenses, if any, of any professionals incurred, directly or indirectly, in respect of, arising from or relating to, the initiation or prosecution (but not the investigation conducted prior to any such initiation or prosecution) of any challenge to the Pre-Petition Obligations, the Agent's liens on the Pre-Petition Collateral or any other claims or causes of action against the Agent or the Lenders) not to exceed $5,000,000 in the aggregate, plus unpaid Professional Fees and Disbursements previously incurred prior to the delivery of written notice to the Debtors of the occurrence of such Event of Default; and (c) the costs and administrative expenses (other than the fees and expenses, if any, incurred, directly or indirectly, in respect of, arising from or relating to, the initiation or prosecution (but not the investigation conducted prior to such initiation or prosecution) of any challenge to the Pre-Petition Obligations, the Agent's liens on the Pre-Petition Collateral or any other claims or causes of action against the Agent or the Lenders) not

to exceed $500,000 in the aggregate that are permitted to be incurred by any Chapter 7 trustee pursuant to an order of this Court following any conversion to Chapter 7 of these Cases. So long as no written notice of the occurrence of an Event of Default has been delivered to the Debtors, the Debtors shall be permitted to pay without reduction of the Carveout, but subject to the Budget, the Professional Fees and Disbursements, as the same may be due and payable. Any and all Professional Fees and Disbursements paid by the Debtors shall constitute a diminution in the value of the Pre-Petition Collateral and the Post-Petition Collateral for all purposes. Nothing herein shall be construed as a waiver of the right of any party to object to the allowance of any Professional Fees and Disbursements.

25. Notwithstanding the foregoing, in no event shall the Cash Collateral or the Carveout be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any of the professionals incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (a) challenging the Pre-Petition Obligations, invalidating, setting aside, avoiding, or subordinating in whole or in part the Agent's liens and security interests granted pursuant to the Loan Documents, the Interim Order or this Final Order, or asserting any other claims or causes of action against the Agent or the Lenders (but the Cash Collateral or the Carveout may be used for the investigation in connection therewith, subject to a limitation of $500,000), or (b) preventing, hindering or delaying, whether directly or indirectly, the Agent's enforcement or realization upon any Pre-Petition Collateral or Post-Petition Collateral in accordance with the terms of this Final Order.

### Adequate Protection Payment

26.     As a material inducement to the Agent and the Lenders to consent to the use of the Cash Collateral pursuant to the Interim Order and this Final Order, and based upon (a) the Debtors' acknowledgement and agreement that the Cash Collateral as of the Petition Date greatly exceeded the Debtors' liquidity requirements during these Cases and (b) the Debtors' acknowledgment that their cash balance exceeded $300,000,000 in late October 2008, at which time the Debtors borrowed approximately $250,000,000 from the Lenders, representing their first borrowing of revolving credit loans under the Credit Agreement dated as of November 17, 2006, as adequate protection of the Lenders' interest in the Pre-Petition Collateral and the Cash Collateral, the Debtors were authorized and directed by this Court pursuant to the Interim Order to pay in cash, and have paid, to the Agent, for the ratable benefit of the Lenders, $250,000,000. This payment (a) was promptly applied by the Agent to reduce the Pre-Petition Obligations in accordance with the terms of the Guarantee and Collateral Agreement, and (b) shall be subject to further order of this Court in connection with any successful challenge to the validity of the Agent's and the Lenders' liens on the Cash Collateral. The use of the Cash Collateral to make such adequate protection payment shall not constitute a diminution in value of the Pre-Petition Collateral giving rise to an Adequate Protection Obligation.

### Fees, Costs and Expenses of the Agent

27.     As additional adequate protection, the Debtors are authorized and directed, within 20 days of submission of invoices therefor (which invoices shall also be delivered to the United States Trustee and to the Committee, and shall contain a summary description of services rendered and a listing of hours of service by professional for the time period covered thereby), to pay all reasonable fees and expenses incurred by the Agent (including, without limitation, the administration fees payable to the Agent under the Credit Agreement, and the reasonable fees

and expenses of Chilmark Partners LLC or any successor or other financial advisors to the Agent, and Simpson Thacher & Bartlett LLP and Vinson & Elkins L.L.P., or any successor or other outside counsel advising the Agent), in each case, in connection with matters relating to the Credit Agreement and the other Loan Documents, the Pre-Petition Obligations, these Cases or the enforcement and protection of the rights and interests of the Agent and the Lenders in these Cases. None of the fees or expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute and retain jurisdiction to review the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Nothing contained herein shall be deemed to be a waiver by any party in interest of the right to object to the reasonableness of any fees or expenses incurred by the Agent. The use of the Cash Collateral to make such adequate protection payments for the fees, costs and expenses of the Agent shall not constitute a diminution in value of the Pre-Petition Collateral giving rise to an Adequate Protection Obligation.

### Reporting Requirements

28. As further adequate protection hereunder, the Debtors shall provide the following reporting to the Agent (the "Reporting Requirements"):

(a) no later than twenty (20) days prior to the last day covered by the Budget, the Debtors shall deliver to the Agent a proposed budget covering a subsequent agreed upon period. Upon the acceptance by the Agent of such proposed budget (after giving effect to any modifications thereto), such proposed budget shall become the applicable "Budget" for the period through the Termination Date covered thereby;

(b) commencing on April 30, 2009, and on the last business day of every month thereafter, 13-week rolling cash flow projections for the Debtors, on a consolidating basis by

operating group (e.g., print, internet) and consolidated basis, with comparisons to any previously forecasted cash flows or balances for such period;

(c) the Debtors shall provide the reporting set forth in Section 5.01(b) (quarterly statements) of the Credit Agreement as if such Section were incorporated herein in its entirety;

(d) within fifteen (15) days after April 30, 2009, and within fifteen (15) days after the end of every month thereafter, (i) consolidated and consolidating financial statements for the Debtors as of the end of the preceding month, as certified by the chief financial officer or treasurer of Idearc and (ii) a monthly statement showing cost saving initiatives, revenue pacing and other performance metrics for the preceding month, with comparisons to those results from the preceding monthly statement delivered pursuant to this section (d)(ii) of this paragraph 28; and

(e) promptly following any written request therefor, such other information regarding the operations, business affairs and financial condition of Idearc or any of its subsidiaries, or compliance with the terms of any Loan Document, as the Agent may reasonably request.

The Agent shall have full access, upon notice during normal business hours, to the Debtors' business records, business premises, and to the Pre-Petition Collateral or Post-Petition Collateral to enable the Agent to (a) review, appraise, and evaluate the physical condition of the Pre-Petition Collateral or Post-Petition Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with the Agent regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the Agent and its professionals and consultants to conduct such reviews, evaluations and inspections. At its discretion, the Agent may request, and the Debtors agree to provide, periodic telephonic updates

to the Agent and the Lenders concerning the operations, business affairs and financial condition of the Debtors.

29. Under the circumstances, and based upon the Agent's consent and the adequate protection payment described in paragraph 26 hereof, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Agent and the Lenders. Notwithstanding any other provision hereof, the grant of adequate protection to the Agent and the Lenders pursuant hereto is without prejudice to the right of the Agent or the Lenders to seek modification of the grant of adequate protection provided hereby so as to provide additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

### Automatic Perfection

30. The Replacement Liens granted pursuant to the Interim Order and this Final Order to secure the Adequate Protection Obligations shall constitute valid, enforceable and duly perfected security interests and liens, and the Agent and the Lenders shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection, enforceability or priority of such Replacement Liens. If, however, the Agent, in its sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Debtors are directed to cooperate with and assist in such process, the Automatic Stay is hereby lifted to allow the filing and recording of a certified copy of the Interim Order and this Final

Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of the Interim Order.

### No Additional Liens

31.     Except as expressly set forth in this Final Order, the liens granted pursuant to the Interim Order and this Final Order shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code § 551 or (ii) subordinated to or made pari passu with any other lien under Bankruptcy Code §§ 363 and 364. Subject to the Carveout, the Replacement Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such Post-Petition Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors).

### No Liability

32.     No act committed or action taken by the Agent or the Lenders pursuant to this Final Order, including without limitation, approval of the Budget, or the collection of the Pre-Petition Obligations, or by virtue of the interests, rights, and remedies granted to or conferred upon the Agent and Lenders under the Loan Documents, the Interim Order or this Final Order, shall be used, construed, or deemed to hold the Agent or the Lenders to be in "control" of or participating in the governance, management, or operations of the Debtors for any purpose, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of the Debtors or their businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, the Worker Adjustment and Retraining Notification (WARN) Act, the Comprehensive Environmental Response, the Compensation and Liability Act, or the Bankruptcy Code, each as

may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise).

## Automatic Stay

33.     The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors and the Agent to take all actions necessary to implement this Final Order, (b) all actions and transfers contemplated herein, and (c) consistent with the terms of this Final Order, following the occurrence and continuation of an Event of Default, to permit the Agent to pursue its rights and remedies as to the Pre-Petition Collateral and Post-Petition Collateral in accordance with the Loan Documents and applicable law.

## No Surcharge

34.     Except to the extent of the Carveout, no costs or expenses of the Debtors or their estates incurred in connection with the preservation or disposition of the Pre-Petition Collateral or the Post-Petition Collateral in these Cases, or in any subsequent Chapter 7 cases of the Debtors or other proceedings or matters related hereto, shall be charged against the Agent, the Lenders, the Post-Petition Collateral or the Pre-Petition Collateral (including the Cash Collateral) pursuant to Bankruptcy Code § 506(c) or otherwise.

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

35.     The Debtors' right to use the Cash Collateral on a consensual basis pursuant to this Final Order shall terminate (the date of any such termination, the "Termination Date") on the earliest to occur of (i) consummation of a plan of reorganization in these Cases, (ii) September 30, 2009, unless otherwise extended by the Debtors with the consent of the Agent, in its sole discretion, or (iii) upon written notice by the Agent to the Debtors after the occurrence

and continuance of any of the following events ("Events of Default") beyond any applicable grace period:

(a) failure of the Debtors to comply in any material respect with the terms of this Final Order and such failure shall continue unremedied for more than three (3) business days after notice thereof;

(b) (i) failure of the Debtors to deliver a proposed budget at least twenty (20) days prior to the expiration of the then applicable Budget, or a proposed budget shall not have been approved by the Agent as the applicable "Budget" for purposes hereof by the date that is at least ten (10) days prior to the expiration of the then applicable Budget, or (ii) failure of the Debtors to comply with the Reporting Requirements (other than section (a) of paragraph 28 hereof) and such failure shall continue unremedied for more than five business days after notice thereof;

(c) failure of the Debtors to maintain a minimum available net cash balance (i) on April 30, 2009, of at least $350,000,000 and (ii) on the last Friday of each month thereafter, in an amount to be set forth in the Budget;

(d) any of these Cases shall be dismissed or converted to a Chapter 7 case; or a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in Bankruptcy Code §§ 1106(a)(3) and (4)) shall be appointed in any of these Cases; provided that the appointment by the Court of a trustee or other fiduciary of any of the Debtors' estates for the limited purpose of investigating, commencing or prosecuting Avoidance Actions on behalf of such Debtor's estates shall not constitute a default under this subparagraph;

(e) the Bankruptcy Court shall enter an order granting relief from the Automatic Stay to the holder or holders of any security interest (other than the Agent) to permit foreclosure (or

the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtors which have an aggregate value in excess of $3,000,000;

(f) an order shall be entered reversing, amending, supplementing, staying for a period in excess of 3 days, vacating or otherwise modifying this Final Order without the consent of the Agent;

(g) a pleading shall be filed by any of the Debtors seeking, or otherwise consenting to, any of the matters set forth in paragraphs (d) through (f) hereof;

(h) the Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than (i) those in favor of the Agent, (ii) statutory, carriers', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation and (iv) deposits to secure the payment of post-petition utilities, the performance of bids, trade contracts (other than for borrowed money), leases, statutory obligations, surety and appeal bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business; provided that the aggregate value of the liens, pledges or deposits referred to in clauses (ii), (iii) and (iv) above shall not exceed $5,000,000 at any one time; or any other claim which is pari passu with or senior to the Adequate Protection Obligations, other than the Carveout, shall be granted in any of these Cases; and

(i) any judgment in excess of $3,000,000 as to any post-petition obligation not covered by insurance shall be rendered against the Debtors and the enforcement thereof shall not be stayed.

The Debtors shall promptly provide notice to the Agent (with a copy to counsel for the Committee and the United States Trustee) of the occurrence of any Event of Default.

### Remedies

36. On the Termination Date, (i) the Debtors' right to use the Cash Collateral shall terminate, (ii) the Adequate Protection Obligations shall become immediately due and payable, (iii) the Debtors shall immediately direct the banks that maintain the accounts in which the Debtors keep their cash to turn over such cash to accounts of the Debtors maintained with the Agent, and (iv) the Agent and the Lenders may, upon five (5) business days' written notice to the Debtors (with a copy to counsel for the Committee and the United States Trustee), exercise the rights and remedies available under the Loan Documents, this Final Order or applicable law, including without limitation, setting off amounts in any accounts of the Debtors maintained with the Agent or such Lender, and foreclosing upon and selling all or a portion of the Pre-Petition Collateral or Post-Petition Collateral in order to collect the Adequate Protection Obligations. The actions described in clauses (iii) and (iv) above may be taken without further order of or application to the Court as the Agent shall, in its discretion, elect, and the Automatic Stay is hereby deemed modified and vacated to the extent necessary to permit such actions, provided that no order prohibiting such action is entered by this Court during the above-referenced five (5) business day period. The Agent shall be entitled to apply the payments or proceeds of the Pre-Petition Collateral in accordance with the provisions of the Loan Documents, and in no event shall the Agent or the Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Pre-Petition Collateral, Post-Petition Collateral or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Agent and the Lenders under this Final Order shall survive the Termination Date. In addition, the Agent and the Lenders do not consent, and reserve the right to object, to any proposed use by the Debtors of the Cash Collateral after the Termination Date.

## OTHER TERMS

37.     Without the prior written consent of the Agent or order of this Court, the Debtors shall be enjoined and prohibited from at any time during these Cases granting (or seeking authority from the Court to grant) liens on the Pre-Petition Collateral, the Post-Petition Collateral or any portion thereof to any other parties pursuant to Bankruptcy Code § 364 or otherwise, which liens are senior or on a parity with the Replacement Liens.  Except on the terms of this Final Order, the Debtors shall be enjoined and prohibited from at any time prior to the Termination Date (i) using the Cash Collateral or (ii) using the Post-Petition Collateral. Notwithstanding any provision in other "first day" orders entered by this Court authorizing the Debtors to make payments in respect of pre-petition obligations, the terms of the Interim Order, this Final Order and the Budget conditioning the payment of such amounts or limiting the amount of such payments are controlling.

38.     The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting any of these Cases to a Chapter 7 case; or (b) dismissing any of these Cases.  If an order dismissing these Cases under Bankruptcy Code § 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code §§ 105 and 349) that (y) the Replacement Liens granted pursuant to the Interim Order and this Final Order shall continue in full force and effect and shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been paid and satisfied in full and (z) this Court shall retain jurisdiction for purposes of enforcing this Final Order.

39.     If any or all of the provisions of this Final Order are hereafter modified (which shall not occur without the prior written agreement of the Agent), vacated, or stayed, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or

liability incurred by the Debtors to the Agent or the Lenders before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of the Replacement Liens, or any priority or other protection authorized, created, or confirmed by the Interim Order or by this Final Order. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Agent or the Lenders before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the Agent and the Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

40. No approval, agreement, or consent requested of the Agent by the Debtors pursuant to the terms of this Final Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Agent or the Lenders other than from a writing signed by the Agent. Nothing herein shall in any way affect the rights of the Agent or the Lenders as to any non-Debtor entity.

41. Entry of this Final Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Agent or the Lenders may have against the Debtors or third parties, and without prejudice to the right of the Agent and the Lenders to seek relief from the Automatic Stay or any other relief in these Cases, and the right of the Debtors and any other party in interest to oppose any such relief. The provisions of this Final Order shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Cases as a legal representative of the Debtors or the Debtors' estates.

42.     Pursuant to Bankruptcy Code §§ 105, 361 and 363, the Agent and the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order.

43.     This Final Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by this Court, and may be relied upon by the Agent, the Lenders, and the Debtors without the necessity of entry into the docket of these Cases. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

44.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Final Order and to adjudicate any and all disputes in connection herewith.

## RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT

45.     As a result of the Debtors' review of the Loan Documents and the facts related thereto, the Debtors have made certain agreements and acknowledgments as set forth in paragraphs 10-13 above and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Loan Documents or any transactions or course of conduct related thereto.  The acknowledgments and agreements contained in paragraphs 10-13 hereof shall be binding upon the Debtors in all circumstances, and shall be binding upon all other parties in interest, including without limitation, the Committee, unless (a) a party in interest (including the Committee) has been granted standing to file and has properly filed an adversary proceeding or contested matter (subject to the limitations set forth in paragraph 25 hereof) challenging the validity, enforceability or priority of the Pre-Petition Obligations or the Agent's liens on the Pre-Petition

Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Agent or the Lenders on behalf of the Debtors' estates, no later than July 13, 2009, and (b) this Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is commenced as of such date, the Pre-Petition Obligations shall constitute allowed claims, not subject to defense, counterclaim, offset of any kind, or subordination and otherwise unavoidable, for all purposes in these Cases or any subsequent Chapter 7 cases, the Agent's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Agent, the Lenders, the Pre-Petition Obligations and the Agent's liens on the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto.   If any such adversary proceeding or contested matter is timely commenced as of such date, the acknowledgements and agreements contained in paragraphs 10-13 shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgements and agreements were expressly challenged in such adversary proceeding or contested matter.

## **MASTER PROOF OF CLAIM**

46.    In order to facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Agent is authorized to file a master proof of claim on behalf of itself and the Lenders on account of their claims arising under the Loan Documents, the Swap Agreements and hereunder against all of the Debtors (the "Master Proof of Claim"), and the Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.

47.     Upon the filing of the Master Proof of Claim against the Debtors, the Agent and each Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the Loan Documents and the Swap Agreements, and the claim of the Agent and each Lender (and each of their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in these Cases in the amount set forth opposite each name in the Master Proof of Claim; provided that the Agent may but shall not be required to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

48.     The provisions set forth in paragraphs 46-48 hereof and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of paragraphs 46-48 hereof nor the Master Proof of Claim shall affect the substantive rights of the Debtors, the Committee, the Agent or the Lenders or any other party in interest, including without limitation, the right of each Lender to vote separately on any plan of reorganization proposed in these Cases.

49.     Any notice, report, or other document required to be given hereunder shall be deemed given upon its deposit in the United States mail, postage pre-paid, and addressed as follows:

if to the Agent:

Neil Boylan
JPMorgan Chase Bank, N.A.
277 Park Avenue
New York, New York
Fax: (212) 622-4557

with a copy to:

Steve Fuhrman
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017
Fax:  (212) 455-2502

– and –

William Wallander
3700 Trammell Crow Center
Vinson & Elkins L.L.P.
2001 Ross Avenue
Dallas, TX 75242
Fax: (214) 220-7716

if to the Debtors:

Cody Wilbanks
Idearc Inc.
2200 W. Airfield Dr., MC29
DFW Airport, Texas 75261
Fax: (972) 453-6829

with a copy to:

Toby L. Gerber
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Fax: (214) 855-8200

- and -

Berry D. Spears
Fulbright & Jaworski L.L.P.
600 Congress Avenue
Suite 2400
Austin, Texas 78701
Fax: (512) 320-4598

if to the United States Trustee:

George F. McElreath
Office of the United States Trustee
Room 976
1100 Commerce Street
Dallas, Texas  75242

50.    Nothing in this Final Order shall be construed to affect the pre-petition or

post-petition priority of the liens and claims of the Ad Valorem Taxing Authorities (as defined

below) or to grant Replacement Liens and/or claims that prime the asserted pre-petition and post-petition ad valorem property tax liens and/or claims of Dallas County, Tarrant County, City of Coppell, Coppell Independent School District and Irving Independent School District (collectively, the "Ad Valorem Taxing Authorities") to the extent such ad valorem property tax liens and/or claims are senior to the liens, security interests and claims of the Agent and Lenders which are granted pursuant to Texas law and which are not otherwise avoidable.  Nothing in this Final Order shall prohibit the attachment of such liens of the Ad Valorem Taxing Authorities to property of the Debtors' estates to the extent such attachment is authorized by Texas law.  The provisions in this Final Order concerning the Ad Valorem Taxing Authorities shall supersede the effect of the Interim Order *nunc pro tunc* to the Petition Date.

51.    Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim Order shall remain in effect and are hereby ratified by this Final Order.  In the event of any inconsistency between the terms of this Final Order and the terms of the Interim Order, the terms of this Final Order shall govern.

52.    THE  CASH  COLLATERAL  MOTION  IS  APPROVED  AND GRANTED AS SET FORTH HEREIN.

### END OF ORDER ###

**AGREED TO AND ACCEPTED:**

**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue,
Dallas, Texas 75201
Fax: (214) 855-8200

By:      /s/ Toby L. Gerber
         Toby Gerber, TX # 07813700

**COUNSEL FOR THE DEBTORS**

**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

Steve Fuhrman, pro hac vice
Elisha D. Graff, pro hac vice

**VINSON & ELKINS L.L.P.**
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75242
Tel:  (214) 220-7700
Fax: (214) 220-7716

By:      /s/ William L. Wallander
         Daniel Stewart, TX # 19206500
         William L. Wallander, TX # 20780750

**COUNSEL FOR THE AGENT**

## EXHIBIT 1

**BUDGET**
**[DOCKET NO. 186]**

Exhibit 1

509600-0289-11363-Active.11584847.9